IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 6, 2013

## IN RE ADRIANA L.[1] ET AL.

**Appeal from the Juvenile Court for Davidson County**
**No. 158782     Betty Adams Green, Judge**

—————————

**No. M2013-00646-COA-R3-PT - Filed September 25, 2013**

—————————

The trial court terminated the parties' parental rights based on a finding of severe child abuse and abandonment and determined that the termination of parental rights was in the best interest of the children. We find clear and convincing evidence to support the trial court's determination that the parties engaged in severe child abuse and that termination of their parental rights is in the children's best interest. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, M.S., P.J., and RICHARD H. DINKINS, J., joined.

Nick Perenich, Nashville, Tennessee, for the appellant, Jennifer L.

Kelli Barr Summers, Brentwood, Tennessee for the appellant, Sergio G.R.

Robert E. Cooper, Jr., Attorney General and Reporter and Ryan L. McGehee, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

**OPINION**

## I. Facts and Procedural History

Jennifer L. ("Mother") is the mother of the children who are the subject of this appeal—Adriana L., born December 19, 2006, Noah L., born September 4, 2009, and Graycie G.R., born December 28, 2010 (collectively the "children"). Sergio G.R. ("Sergio

---

[1]This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

G.R.") is the father of Graycie.[2]  The children were placed in the emergency protective care of the Department of Children's Services ("DCS") in September 2011 due to allegations of child abuse. The injuries giving rise to the allegation of abuse became apparent when Noah was transported to Vanderbilt Medical Center on September 23, 2011 and was diagnosed with a perforated bowel, a lacerated liver, a pancreatic injury, and permanent brain damage. Carrie Donnell, a pediatric nurse practitioner, testified that his injuries were indicative of inflicted trauma.

On May 8, 2012, DCS filed a petition to terminate parental rights.  The trial court held a three-day trial on non-consecutive days and heard testimony from the following witnesses: Carrie Donnell, a pediatric nurse practitioner on the CARE ("Child Abuse Response and Evaluation") Team at Vanderbilt Hospital; Virginia Gray, an employee with child protective services; Sergio G.R.; Mother; Jacob Pilarski, a detective in the youth services division of the Nashville Metropolitan Police Department; Michelle H., DCS resource parent; Terrill Nesmith, DCS Case Manager; and Pedro L., the children's grandfather.[3]  The court also reviewed a forensic interview of Adriana that was previously recorded by DCS.  By final order entered January 30, 2013 and later amended on February 27, 2013, the court terminated the parental rights of Mother and Sergio G.R. based on a finding of severe abuse and abandonment.  The court made the following relevant findings of fact:

> (c) Ms. Donnell testified that anyone who saw Noah after he was injured would have known that he needed immediate medical treatment.  The delay in seeking medical treatment for Noah's injuries resulted in permanent, irreversible brain injury due to hypotension.  The internal bleeding in his abdominal cavity deprived his brain of a sufficient amount of oxygenated blood for a prolonged period of time.  If Noah had received reasonably prompt medical attention, he would have recovered completely from the initial injuries.  Because of the delay in treatment, he suffered terribly and almost died. He suffered severe developmental delays, cognitive and physical delays, and impairment in gross and fine motor skills - all of which are due to the brain injury caused by the *delay* in getting treatment for the initial injuries. While he has made remarkable progress, he will remain at risk for seizures and developmental problems in the years ahead.
>
> (d) Contrary to the assertions of the mother, Noah would have exhibited acute

---

[2]  Sergio R.H., the father of Adriana, and Noel H., the father of Noah, are not parties to this appeal.

[3]  We will discuss the testimony of the witnesses in the analysis section as it relates to the issues presented.

symptoms after sustaining the injuries to his colon and liver. These symptoms would have begun immediately and would have included intense and continuing pain to the point that he would not have wanted to be touched, inability to eat or drink, lethargy, and an increasingly hard and distended abdomen. Mother's testimony is simply not credible.

(e) The Court heard about other abuse and neglect in the home from Adrianna herself. Based upon her consistent forthcoming and compelling statements in her forensic interview, the Court finds that the children have been exposed to . . . additional acts of violence in the home . . . .

(l) The Court finds that either the mother or [Sergio G.R.] or both inflicted Noah's injuries and that one or both failed to protect him from the other. Both the initial injuries and the inexcusable delay in seeking medical treatment constitute severe child abuse. When Noah was finally taken to a hospital, he had been vomiting for 24 hours and had not eaten in 33 hours. He would have started vomiting within one hour of the injuries. The delay in treatment was the direct cause of the life-altering brain injury.

Mother and Sergio G.R. appeal.

## II. Standard of Review

A parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only if there is a compelling state interest. *Nash-Putnam*, 921 S.W.2d at 174-75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). Pursuant to Tenn. Code Ann. § 36-1-113(l)(1), "[a]n order terminating parental rights shall have the effect of severing forever all legal rights and obligations of the parent or guardian of the child against whom the order of termination is entered and of the child who is the subject of the petition to that parent or guardian."

Our termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B., IV*, M2004-00999-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). To support the termination of parental rights, petitioners must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Thus, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004) (citations omitted). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id.*

In light of the heightened standard of proof in these cases, a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d). *Id.* at 654; *see In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013). As to the trial court's findings of fact, our review is de novo with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *In re Taylor B.W.*, 397 S.W.3d at 112. We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the grounds necessary to terminate parental rights. *Id.*

## III. Analysis

Mother and Sergio G.R. argue that the evidence does not clearly and convincingly support the grounds for termination. The parties also contend the trial court made several errors with respect to the admission of certain evidence and the qualification of Carrie Donnell as an expert.

### A. Evidentiary Issues

The admissibility of evidence is within the trial court's sound discretion, and we review the trial court's decision to admit or exclude evidence by an abuse of discretion standard. *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004); *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992). Under the abuse of discretion standard, a reviewing court cannot substitute its judgment for the trial court's judgment. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011). Rather, a reviewing court will find an abuse of discretion only if the trial court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party." *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d

346, 358 (Tenn. 2008); *see also Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

*Prior Orders*

Mother asserts that the trial court erred in admitting two prior orders that adjudicated the children dependent and neglected and found the children were subjected to severe abuse as exhibits at trial. Mother states that she filed an appeal from those orders which was still pending at the time of the termination hearing. She argues that because the orders were being appealed, they were not final and should not have been admitted or relied on by the trial court.[4] Mother also asserts that the trial court erred in using "the findings and conclusions from those trials instead of making findings based upon the evidence presented at the termination of parental rights trial."

Mother cites *In re Shyronne D.H.* in support of her contentions. *In re Shyronne D.H.*, No. W2011-00328-COA-R3-PT, 2011 WL 2651097 (Tenn. Ct. App. July 7, 2011). In *In re Shyronne D.H.*, the trial court held that a previous finding of severe child abuse from a dependency and neglect proceeding was res judicata and excluded all evidence and argument on the issue of severe abuse at the termination of parental rights hearing. *Id.* at *9. Mother appealed, and this Court determined that the prior order the trial court relied on was not yet a final judgment and that the trial court erred by precluding Mother from asserting her defense. *Id.* at *10. *In re Shyronne D.H.* is distinguishable from the instant case. Here, the trial court heard testimony from eight witnesses regarding the parties' alleged child abuse and made independent findings that the conduct of the parties constituted severe child abuse. The trial court recognized it could not solely rely on the prior order[5] and did not apply the doctrine of res judicata, nor did it preclude Mother from presenting evidence on the issue of severe abuse. Furthermore, we have carefully reviewed the testimony and exhibits presented at trial and find that the trial court did not adopt the findings of fact and conclusions of law in the prior orders wholesale; rather, the court allowed the parties to fully litigate the issues and made independent findings based on the evidence presented. The introduction of the

---

[4] DCS agrees that a non-final judgment cannot be the basis for res judicata until all appellate remedies have been exhausted. *See Creech v. Addington*, 281 S.W.3d 363, 376-78 (Tenn. 2009).

[5] We note that parental rights may be terminated where "[t]he parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court . . . ." Tenn. Code Ann. § 36-1-113(g)(4); see also *Tenn. Dep't of Children's Servs. v. M.S.*, No. M2003-01670-COA-R3-CV, 2005 WL 549141, at *10 (Tenn. Ct. App. Mar. 8, 2005) ("The most serious consequence of a finding that a parent has committed severe child abuse is that such a finding, in and of itself, constitutes a ground for termination of parental rights."). If the prior orders at issue in this case were considered final judgments, the trial court could have relied upon them to terminate the parties' parental rights.

prior orders is not reversible error.

*Forensic Interview*

Sergio G.R. argues that the trial court erred in admitting a forensic interview of Adriana in which she disclosed incidences of domestic violence and abuse perpetrated by him.

Tennessee Rule of Evidence 803(25) provides that "statements about abuse or neglect made by a child alleged to be the victim of physical, sexual, or psychological abuse or neglect, offered in a civil action concerning issues of . . . termination of parental rights" are not excluded by the hearsay rule "provided that the circumstances indicate trustworthiness." Sergio G.R. asserts that Adriana's testimony was inconsistent and unreliable, and therefore did not "indicate trustworthiness" as required by Tenn. R. Evid. 803(25). The Advisory Commission Comments to Tenn. R. Evid. 803(25) direct courts to consider the motivation of particular minor declarants, the motivation of some adults to influence children, and the presence or absence of evidence corroborating the hearsay statement when determining the trustworthiness of such statements.

We have reviewed the record and find no evidence that Adriana had any motivation to be untruthful, nor is there evidence that her testimony was improperly influenced or coached by an adult. Moreover, there is evidence in the record to corroborate many of Adriana's statements regarding Sergio G.R.'s domestic violence toward Mother and other abusive conduct in the home. Given the trial court's broad discretion in evidentiary matters, we find no error in the trial court's decision to admit the forensic interview of Adriana.

*Expert Testimony*

Mother and Sergio G.R. contend that the trial court erred in qualifying Carrie Donnell as an expert witness in the area of child abuse. Specifically, they attack the level and amount of Ms. Donnell's experience and training and also assert that the court erred in allowing her to provide medical opinions.

Questions regarding the admissibility, qualifications, relevancy and competency of expert testimony are generally left to the discretion of the trial court. *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 263 (Tenn. 1997). The court's decision to admit or exclude the testimony of an expert will not be reversed on appeal unless a clear abuse of discretion is demonstrated. *Id*. at 263-64. Tennessee Rule of Evidence 702, which governs the use of expert witnesses, permits an expert to testify in the form of an opinion "[i]f scientific, technical, or other specialized knowledge will substantially assist the trier of fact to

understand the evidence or to determine a fact in issue . . . .”

After reviewing the record, we hold that the trial court did not err in qualifying Ms. Donnell as an expert witness in child abuse. Ms. Donnell earned a master's degree in nursing from Vanderbilt University and is a pediatric nurse practitioner at Vanderbilt Hospital. She works under the supervision of a child abuse pediatric specialist and is on the CARE Team, which reviews approximately 500 child abuse or neglect cases per year. Ms. Donnell had specialized knowledge in the area of child abuse that substantially assisted the court in determining a fact in issue. *See* Tenn. R. Evid. 702. In addition, we have reviewed Ms. Donnell's testimony related to Noah's medical condition and find she was competent to testify regarding his medical condition and treatment.

*B. Grounds for Termination: Severe Abuse*

Pursuant to Tenn. Code Ann. § 36-1-113(g)(4), the trial court terminated Mother and Sergio G.R.'s parental rights based on a finding that they both committed severe child abuse. Specifically, the court stated in its final order:

> The Court finds that either the mother or [Sergio G.R.] or both inflicted Noah's injuries and that one or both failed to protect him from the other. Both the initial injuries and the inexcusable delay in seeking medical treatment constitute severe child abuse. When Noah was finally taken to the hospital, he had been vomiting for 24 hours and had not eaten in 33 hours. He would have started vomiting within one hour of the injuries. The delay in treatment was the direct cause of the life-altering brain injury.

The parties contend the evidence did not clearly and convincingly support the court's holding.

Tennessee Code Annotated section 37-1-102(b)(23)(A)(i) defines severe child abuse as: “The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death[.]” The word “knowing” as used in section 37-1-102(b)(23) is not defined by statute; however, we have previously described the term as follows:

> We consider a person's conduct to be “knowing,” and a person to act or fail to act “knowingly” when he or she has actual knowledge of the relevant facts and circumstances or when he or she is either in deliberate ignorance of or in reckless disregard of the information that has been presented to him or her.

*In re Caleb J.B.W.*, No. E2009-01996-COA-R3-PT, 2010 WL 2787848, at *5 (Tenn. Ct. App. July 14, 2010) (citing *In re R.C.P.*, No. M2003-01143-COA-R3-PT, 2004 WL 1567122, at *7 (Tenn. Ct. App. July 13, 2004)).

The evidence shows the Noah was a healthy two-year-old child prior to the morning of September 22, 2011. Although the parties gave varied and inconsistent accounts of what transpired in the hours leading to Noah's hospitalization, there is no dispute that Noah sustained serious bodily injuries while in the care of his Mother and Sergio G.R. on that day. Medical records filed as an exhibit at trial described the severity and likely source of Noah's abdominal injuries as follows:

> Liver lacerations are from blunt trauma. In active children, such an injury could be sustained in a bicycle accident in which the child's abdomen impacts the handlebars, or in a motor vehicle crash . . . . Clearly, Noah has no history of either type of episode. . . . Without a clear history of a major accident in which something compressed the abdominal wall, this injury is result of child physical abuse. The usual mechanisms are a punch or kick to the abdomen.

The medical records also described the bruising present on Noah's body as follows: "[t]he presence of bruising to multiple parts of the body and patterned lesions indicate that several different forces have acted upon this child. . . ." With respect to the delay in treatment of Noah, the medical records state: "The delay in seeking medical attention put this child at extreme risk of infection and death. This indicates medical neglect by Noah's caretakers."

Detective Pilarski testified that he questioned Sergio G.R. regarding Noah's injuries while Noah was hospitalized and stated:

> I asked [Sergio G.R.] if he hit Noah harder than normal, and he said he did. I asked [Sergio G.R.] if he thought he caused the injuries. He said, "Maybe, but I love him." I asked [Sergio G.R.] if he thinks that is what made him sick, and he nodded yes. And then he said, "I didn't mean to do that."

When Sergio G.R. was questioned about the cause of Noah's injuries at trial, he asserted his Fifth Amendment privilege against self-incrimination.[6] The evidence does not preponderate

---

[6] Because Adriana provided corroborating evidence of Sergio G.R.'s previous abusive conduct, the trial court was permitted to draw an adverse inference against Sergio G.R. when he invoked his Fifth Amendment rights. *See Sikora ex rel. Mook v. Mook*, 397 S.W.3d 137, 146-47 (Tenn. Ct. App. 2012) (citing
(continued...)

against the trial court's finding that Sergio G.R. subjected Noah to severe child abuse.

Although there is no direct evidence that Mother engaged in abusive conduct resulting in Noah's devastating injuries, this fact does not prevent the court from finding that she is guilty of severe child abuse. Pursuant to Tenn. Code Ann. § 37-1-102(b)(23), a parent who has not directly abused her own child may still be found to have committed severe child abuse if she knowingly exposed the child to, or knowingly failed to protect the child from abuse or neglect. "Parents have a duty to provide, and children have a corresponding right to be provided with, a safe environment, free from abuse and neglect." *In re R.C.P.*, 2004 WL 1567122, at *6.

Even absent an admission by Mother that she abused the child or witnessed Sergio G.R.'s abuse of the child, there is ample evidence in the record to conclude that she knowingly exposed her children to abuse.[7] Adriana recounted numerous instances of violence and abuse in the home including instances of domestic violence between Mother and Sergio G.R. Adriana also stated that Mother was aware that Sergio G.R. hit the children, kicked Noah, and "threw bottles" at her. In addition, Mother's failure to seek immediate medical care for Noah, despite his acute symptoms, was a direct cause of his permanent brain injury. There is clear and convincing proof in the record from which to conclude that Mother knowingly failed to protect the children from conduct constituting severe child abuse within the meaning of Tenn. Code Ann. § 37-1-102(b)(23)(A). We affirm the trial court's holding

---

[6](...continued)
*Akers v. Prime Succession of Tenn., Inc.*, 387 S.W.3d 495 (Tenn. 2012)). In any event, Detetive Pilarski's testimony of Sergio G.R.'s statement provides independent, clear and convincing evidence of Sergio G.R.'s admission of abusive conduct.

[7] Regarding the abuse and violence in the home, Mother testified as follows:

Q. Have you ever seen [Sergio G.R.] be overly aggressive with your children?
A. I take the Fifth.
. . .
Q. Have you ever seen bruises on Noah after [Sergio G.R.] has disciplined him?
A. I take the Fifth.
. . .
Q. There were times when [Sergio G.R.] hit you, weren't there?
A. Yes.
Q. And do you remember - - and sometimes he hit you with his open hand, sometimes he hit you with his fist, didn't he?
A. Yes.
. . .
Q. Once little Adriana saw the fight and got between you to try to stop it, didn't she?
A. Yes.

that both parties committed severe child abuse.

Parental rights may be terminated based upon a single statutory ground. *In re D.L.B.*, 118 S.W.3d at 367 (Tenn. 2003). In light of our finding clear and convincing evidence in support of the trial court's finding with regard to severe child abuse, we decline to consider the whether the parties abandoned the children.

## C. Best Interests

Sergio G.R. and Mother argue that the trial court erred in concluding that the termination of their parental rights is in the best interest of the children. Tennessee Code Annotated section 36-1-113(i) contains a non-exhaustive list of factors a trial court is required to consider in making the best interest determination.[8] Every factor need not be

---

[8] The factors enumerated at Tenn. Code Ann. § 36-1-113(i) are as follows:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental

(continued...)

applicable for the trial court to determine it is in the best interest of the child for a parent's rights to be terminated. *See In re Audrey S.*, 182 S.W.3d 838, 878 (Tenn. Ct. App. 2005). The best interest analysis is a fact-intensive inquiry requiring the court to consider the unique facts of the case "from the child's, rather than the parent's, perspective." *In re Giorgianna H.*, 205 S.W.3d 508, 523 (Tenn. Ct. App. 2006).

> The trial court stated the following with regard to the statutory factors:
>
> (w) The Respondents have not made an adjustment of circumstance, conduct or conditions as to make it safe and in the children's best interest to be in their home(s).
>
> (x) The Respondents have failed to effect a lasting adjustment after reasonable efforts[9] by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible.
>
> (y) Except for the mother, the Respondents have not maintained regular visitation or other contact with the children.
>
> (z) Except for the mother, a meaningful relationship has not been established between the Respondents and the children.
>
> (aa) A change of caretakers and physical environment is likely to have an adverse effect on the children's emotional, psychological and mental condition.
>
> (bb) The mother and [Sergio G.R.] have shown brutality, physical abuse and/or neglect toward the children.

---

[8](...continued)
to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

[9] Pursuant to Tenn. Code Ann. § 37-1-166(g)(4)(A), DCS is relieved from making reasonable efforts to reunite the family when a court determines that a parent has subjected a child residing in the home to "aggravated circumstances as defined in [Tenn. Code Ann.] § 36-1-102." Aggravated circumstances include, among other things, "severe child abuse." Tenn. Code Ann. §36-1-102(9). The juvenile court adjudicated the children dependent and neglected and severely abused in an Order of Adjudication entered October 9, 2012. Thereafter, DCS was excused from making reasonable efforts to reunite the family.

(cc) The Respondents have not paid child support consistent with the child support guidelines.

The evidence does not preponderate against these findings. In particular, the record contains ample testimony and evidence that the children's best interests will be served by remaining with their foster parent who plans to adopt them. Michelle H., the children's foster parent, testified that Noah was making progress despite his significant mental and physical challenges while under her care. She further testified that Adriana has made significant academic progress since being placed in the foster home. A change of caretakers would likely have a detrimental effect on the children, especially Noah, given his special needs. *See* Tenn. Code Ann. § 36-1-113(i)(5). The record contains clear and convincing evidence that termination of both Mother's and Sergio G.R.'s parental rights is in the children's best interest.

## IV. Conclusion

For the reasons discussed above, we affirm the trial court's decision. Costs of appeal are assessed against the appellants, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE